UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DARRYL EDWARD CHANEY,

                Petitioner,               Case No. 1:12-cv-1058

v.                                         Honorable Janet T. Neff

CARMEN D. PALMER,

                Respondent.
_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner is serving a prison term of 15 to 50 years, imposed by the Kent County Circuit Court on August 24, 2009, after Petitioner pleaded no contest to one count of first-degree criminal sexual conduct (person under 13), MICH. COMP. LAWS § 750.520b(1)(a). In his *pro se* petition, Petitioner raises six grounds for relief, as follows:

    I.      DEFENDANT IS ENTITLED TO WITHDRAW HIS PLEA OF NOLO CONTENDERE BECAUSE THE PLEA AGREEMENT WAS ILLUSORY AND HIS PLEA WAS NOT UNDERSTANDINGLY, VOLUNTARILY AND INTELLIGENTLY MADE. U.S. CONST. AMEND. XIV.

    II.     DEFENDANT MUST BE RESENTENCED BECAUSE THE SENTENCE IS DISPROPORTIONATE.

    III.    DEFENDANT MUST BE RESENTENCED OR THE PRESENTENCE REPORT CORRECTED WHERE THE SENTENCING GUIDELINES WERE SCORED INACCURATELY.

IV.     APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THE ISSUES CONTAINED WITHIN THE MOTION FOR RELIEF FROM JUDGMENT, SHOWING CAUSE FOR FAILURE TO RAISE THE ISSUES PREVIOUSLY ON DIRECT APPEAL, AND PREJUDICE FOR FAILING TO DO SO, IN VIOLATION OF THE DEFENDANT'S SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL.

V.      TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO A MULTIPLICITOUS INDICTMENT ON DOUBLE JEOPARDY GROUNDS, FAILING TO MAKE HERSELF FAMILIAR WITH THE LAW OF THE CASE, AND FAILED TO REPRESENT THE DEFENDANT AS REQUIRED BY THE U.S. AND MICHIGAN CONSTITUTIONS EFFECTIVELY.   U.S. CONST. AMENDS. VI, XIV, MICH. CONST. 1963, ART 1, §§ 17, 20.

VI.     MR. CHANEY'S CONVICTIONS FOR COUNTS I AND II VIOLATED THE PROHIBITION ON DOUBLE JEOPARDY BECAUSE THERE WAS A SINGLE VICTIM AND A SINGLE OFFENSE COMPLAINED OF.   MICH. CONST. 1963, ART. I, § 15; U.S. CONST. AMENDS. V, XIV.

Respondent has filed an answer to the petition (docket #6) stating that the grounds should be denied because they are noncognizable, procedurally defaulted and without merit.   Upon review and applying the AEDPA standards, I find that all six of the grounds in the petition are without merit.[1] Accordingly, I recommend that the petition be denied.

---

[1]It appears that claims V and VI were procedurally defaulted.  However, where, as here, the procedural default issues raise more questions than the case on the merits, the Court may assume, without deciding, that there was no procedural default or that Petitioner could show cause and prejudice for that default.  *See Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003); *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).  Accordingly, I have reviewed each of Petitioner's claims on the merits.

## Procedural History

### A.    Trial Court Proceedings

The state prosecution arose from Petitioner's unlawful sexual encounter with an eight year old girl[2] in the basement of the home that Petitioner shared with the girl and her family. Petitioner was originally charged with two counts of first-degree criminal sexual conduct (CSC 1), MICH. COMP. LAWS § 750.520b(1)(a).  On July 13, 2009, the day trial was scheduled to commence, Petitioner entered a plea of no contest to one count of CSC 1.  In exchange for Petitioner's no contest plea, the prosecutor agreed to: (1) change the offense date to July, 2006 so that Petitioner would obtain the benefit of being sentenced under MICH. COMP. LAWS § 750.520b before its August, 2006 amendment;[3] (2) dismiss the second count of CSC 1; (3) dismiss the fourth-habitual offender enhancement; and (4) decline to pursue a second habitual-sex-offender charge. (Plea Transcript (Tr.) at 4, docket #10.)  At the plea proceeding, the prosecutor explained that, absent the offense date-change and dismissal of the second CSC count, Petitioner could have faced consecutive sentences and a mandatory minimum sentence of 25 years for each conviction.  (*Id.*)  Additionally, the

---

[2]There appears to be some confusion about whether the victim was eight or nine years old at the time of the unlawful sexual encounter to which Petitioner ultimately pleaded no contest.  The victim was born on November 22, 1998.  *See* Report of Kent County Children's Assessment Center, docket #1-5, Page ID#121.  The felony information charged Petitioner with first-degree criminal sexual conduct based on an incident that occurred on July 4, 2007.  *See* Def. App. for Leave to Appeal, docket #1-3, Page ID#30.  Accordingly, the victim was eight years old at the time of the charged incident.

[3]Effective August 28, 2006, MICH. COMP. LAWS § 750.520b was amended to require a 25-year minimum sentence "for a violation that is committed by an individual 17 years of age or older against an individual less than 13 years of age" and permitted the court, in its discretion, to "order a term of imprisonment imposed under this section to be served consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction."  MICH. COMP. LAWS § 750.520b(2)(b) & (3).  Additionally, although not specifically addressed at Petitioner's plea proceeding, the 2006 amendment to § 750.520b required the court to impose lifetime electronic monitoring where the victim is under 13 years of age.  Prior to the 2006 amendment of § 750.520b(2), courts used the sentencing guidelines in fashioning a sentence "for life or for any term of years." MICH. COMP. LAWS § 750.520b(2).

prosecutor explained that a habitual felon charge carries with it a mandatory minimum sentence of 5 years. (*Id.*)

During the plea proceedings, Petitioner testified under oath that he was 41 years old, that he had completed the twelfth grade, that he could read and write in English, that he had an opportunity to talk with his attorney, and that he was satisfied with her representation. (*Id.* at 6.) Petitioner also testified that he understood that, by signing the Advice of Rights form, he would waive the rights listed on the form. (*Id.*) Petitioner testified that he understood that, if the circuit court made factual findings sufficient to find Petitioner guilty, for purposes of sentencing, Petitioner's no contest plea would be treated just as if he pleaded guilty or was convicted at trial. (*Id.* at 7.) Additionally, Petitioner testified that he understood that appellate review of his case would not be automatic and that to obtain review he would have to file an application for leave to appeal. (*Id.*) Petitioner testified that he understood that, in connection with his plea, he would be waiving the right to claim that the plea was the result of any promise, inducement or plea agreement other then the plea agreement that had been made part of the record. (*Id.* at 8.) Finally, Petitioner testified that he understood that once he made a plea, he would not have an automatic right to withdraw it or change his mind. (*Id.*) The trial court made it clear to Petitioner that "while you are free to make a motion to do so, it is very unlikely, candidly, on a day of trial case, . . . that I would let you withdraw your plea." (*Id.*) Petitioner testified that he understood. (*Id.*) The trial court read Petitioner the charge against him:

> [S]ometime during or before July 2006, you engaged in sexual penetration of your penis into the vagina of [the victim], a person who at the time was approximately nine years old, and that person definitely being under 13 years of age at the time of the offense was committed. If convicted of this offense, the maximum penalty is life imprisonment. You would be required to

register as a sex offender.   There might be other GPS positioning requirements.   There might be other issues that would relate to if you're released from prison that would affect your parole status, as far as tracking individuals convicted of offenses of this nature, that apply in today's sentencing environment.

And it could -- it could include wearing a type of GPS, which is a global positioning system anklet or bracelet for the rest of your life, I mean it's possible it could be that restrictive.

You would also be required to be tested for sexually transmitted diseases and for AIDS, for the AIDS virus as well.

(*Id.* at 9.)  Petitioner confirmed that he had understood what the trial court had said.  (*Id.*)

Petitioner testified that he understood the nature of the charges made against him, the maximum penalty and the rights that he had.  (*Id.* at 10.)  Petitioner testified that he was pleading no contest freely and voluntarily, and that he was not promised anything other than those promises made in connection with the plea agreement.  (*Id.*)  The court accepted Petitioner's no contest plea and scheduled sentencing for August 24, 2009.  (*Id.* at 13.)

On August 24, 2009, Petitioner was sentenced to serve a prison term of 15 years to 50 years.  ( Sentencing Tr. (S. Tr.) at 5, docket #11.)  The minimum sentence was at the highest end of the 108 to 180-month range established by the sentencing guidelines as scored.  (*Id.* at 4.) Petitioner, through appellate counsel, filed a motion to withdraw plea or for resentencing, which was heard on August 20, 2010.  In his motion, Petitioner challenged his sentence arguing that: (1) plea agreement was illusory; (2) his plea was not understandingly, voluntarily and intelligently made; (3) the sentence was disproportionate;  and (4) the sentencing guidelines were inaccurately scored. At the hearing, the trial court ruled from the bench, denying Petitioner's motion.  (Motion Tr. at 4, docket #12.)  In so doing, the trial court read lengthy portions of the sentencing transcript into the

record.  (*Id.* at 5-7)  Specifically, the trial court read the following portions of the sentencing transcript: (1) where the court informed Petitioner that a motion to withdraw his plea was likely to be unsuccessful and Petitioner affirmed his understanding; (2) where the court informed Petitioner of the potential consequences he faced if he decided to plea and Petitioner affirmed his understanding; and (3) where the prosecutor set out the plea agreement and Petitioner affirmed his understanding; and (4) where the court explained the consequences of the plea agreement and Petitioner affirmed his understanding.  (*Id.*)  The court rejected Petitioner's claim that the plea bargain was illusory and involuntary, concluding that Petitioner's plea was neither involuntary, nor illusory particularly where, "but for this plea agreement, in all likelihood,  [Petitioner] would have received two consecutive 25-year sentences, minimum,"  and where the "plea had substantial, substantive and real benefits." (*Id.* at 8- 9.)  The court denied Petitioner's motion to withdraw his plea.  (*Id.* at 9.)

With respect to the motion for resentencing, the court read into the record the following portions of the sentencing transcript: (1) where the court announced and defense counsel confirmed that the guideline range was 108 to 180 months; (2) where defense counsel requested that Petitioner be sentenced at "something less than the high end of the guidelines;" and (3) where Petitioner requested that he be sentenced to "something less than the maximum." (*Id.* at 11.)  The court rejected Petitioner's claim that it had not considered the guideline range, stating that the court had sentenced Petitioner within the guideline range, albeit at the highest end of the minimum of that range, and explained its reasoning for doing so.  (*Id.* at 12.)  The court concluded that "resentencing is not appropriate" and denied Petitioner's motion in its entirety.  (*Id.* at 13.)

- 6 -

### B.    Direct Appeal

Petitioner filed a delayed application for leave to appeal to the Michigan Court of Appeals.  His brief, which was filed by counsel on September 8, 2010, raised the same three issues presented in his motion to withdraw plea or for resentencing.  (*See* Def. Delayed App. for Leave to Appeal, docket #13.)  By unpublished opinion issued on October 15, 2010, the Michigan Court of Appeals denied leave to appeal for lack of merit in the grounds presented.  (*See* 10/15/10 Mich. Ct. App. Order (MCOA Ord.), docket #1-3, Page ID#41.)

Petitioner filed an application for leave to appeal to the Michigan Supreme Court. His brief, filed by counsel on November 19, 2010, raised the same three issues presented to, and rejected by the Michigan Court of Appeals.  (*See* Def. App. for Leave to Appeal, docket #1-3, Page ID##21-39.)  By order entered March 8, 2011, the Michigan Supreme Court denied Petitioner's application for leave to appeal because it was not persuaded that the questions presented should be reviewed.  (*See* 3/8/11 Mich. Order, docket #1-2, Page ID#18.)

### C.    Post-conviction Relief

On August 11, 2011, Petitioner filed in the state court a motion to conduct an evidentiary hearing, a motion to appoint counsel and a motion for relief from judgment.  In his motion for relief from judgment, Petitioner raised the following four grounds for relief:

> 1.    Appellate counsel was ineffective for failing to raise the issues contained within the motion for relief from judgment, showing cause for failure to raise the issues previously on direct appeal, and prejudice for failing to do so, in violation of the defendant's Sixth Amendment right to the effective assistance of counsel.
>
> 2.    Trial counsel was ineffective in failing to object to a multiplicitous indictment on double jeopardy grounds, failing to make herself familiar with the law of the case, and failed to represent the defendnat

as required by the United State and Michigan Constitutions effectively.  Const. Amends. VI, XIV; Mich. Const. 1963 Art. 1, §§ 17, 20.

3.  Mr. Chaney's convictions for counts I and II violated the prohibition on double jeopardy because there was a single victim and a single offense complained of.  Mich. Const. 1963, Art 1, § 15; U.S. Const. Amends. V, XIV.

4.  The trial judge abused his discretion, was predisposed to deny any motion filed by or on behalf of the defendant, and demeaned appellate counsel and defendant on the record, in violation of Mr. Chaney's Constitutional right to due process and a fair tribunal.  U.S. Const. Amends. V, XIV.

The state court denied Petitioner's motion for evidentiary hearing, his motion to appoint counsel and his motion for relief from judgment on August 25, 2011.  (*See* Op. & Order Den. Mots. for Post J. Relief (Post-J Mot.), docket #18.)  Petitioner then filed a motion for disqualification under MICH. CT. R. 2.003 and a motion for reconsideration under MICH. CT. R. 6.504(B)(3).  The court denied both motions on September 28, 2011. (*See* Op. & Order Den. Mot. for Recons. (Recons. Mot.), docket #20.)

On October 21, 2011, Petitioner filed in the Michigan Court of Appeals a delayed application for leave to appeal from the state court's denial of his motions for relief from judgment and for disqualification.  Additionally, Petitioner filed a motion to remand and to appoint counsel. On December 16, 2011, the court of appeals denied Petitioner's motion to remand and to appoint counsel, and denied Petitioner's delayed application for leave to appeal.  (12/16/11 MCOA Order, docket #1-5, Page ID#100.)  Petitioner subsequently filed a motion to remand, motion to appoint counsel and an application for leave to appeal in the Michigan Supreme Court, all of which were denied on September 4, 2012.  (*See* 9/4/12 Mich. Order, docket #1-1, Page ID#16.)

## Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:   "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."   28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  The Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).   In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000).  The inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001); *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth by the Supreme Court, or if it decides

a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–406).  The court may grant relief under the "unreasonable application" clause "if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case." *Id.*  A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699.  Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Id.* at 410.  "[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, 572 U.S. ___, 2014 WL 1612424, at *4 (Apr. 23, 2014) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011)).

Where the state appellate court has issued a summary affirmance, it is strongly presumed to have been made on the merits, and a federal court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA.  *See Richter*, 131 S. Ct. at 784; *see also Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference).  The presumption, however, is not irrebuttable. *Johnson*, 133 S. Ct. at 1096.  Where other circumstances indicate that the state court has not addressed the merits of a claim, the court conducts *de novo* review. *See id.* (recognizing that, among other things, if the state court only decided the issue based

on a state standard different from the federal standard, the presumption arguably might be overcome); *see also Richter*, 131 S. Ct. at 785 (noting that the presumption that the state-court's decision was on the merits "may be overcome when there is reason to think some other explanation for the state court's decision is more likely"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to relief.

## Discussion

### A.      Plea Withdrawal

In his first claim for relief, Petitioner contends that the trial court erred when it refused to allow him to withdraw his no contest plea because the plea agreement was illusory and Petitioner did not understandingly, voluntarily and intelligently enter his plea. On direct appeal, the Michigan Court of Appeals considered and denied this claim for lack of merit and the Michigan Supreme Court denied Petitioner's application for leave to appeal because it was not persuaded that the questions presented should be reviewed. (*See* MCOA Op., docket #1-3, Page ID#4; Mich. Order, docket #1-3, Page ID#18.)

- 11 -

In exchange for Petitioner's plea, the prosecutor agreed to change the offense date from July 4, 2007 to July 4, 2006 to avoid the negative impacts of the amendment to MICH. COMP. LAWS § 750.520b, which became effective August 28, 2006. The amendment to MICH. COMP. LAWS § 750.520b created a mandatory 25-year minimum sentence for a CSC 1 conviction and it made discretionary with the court whether the sentences for more than one CSC 1 conviction would run consecutively. (Docket #1-3, Page ID##30-31.) Prior to the amendment, the court used the sentencing guidelines in fashioning a sentence and CSC 1 convictions could not run consecutively. (*Id.*) Petitioner contends that he was actually entitled to the benefits of the pre-amendment version of § 750.520b and did not need to bargain for them. Petitioner asserts that the victim was born November 22, 1998, and that the victim stated that the offense occurred on July 4th, when she was eight years old. Petitioner contends that the victim would have been eight years old in July of 2006.[4] Petitioner asserts that the offense date-change, the most critical part of the plea agreement, was illusory because the offense had to have occurred prior to the amendment of MICH. COMP. LAWS § 750.520b. Petitioner asserts that the recording of July 2007 as the offense date was either an intentional act or an inadvertent error.

The other elements of the plea agreement were the dismissal of the second CSC 1 count, the dismissal of the fourth habitual offender charge and the decision not to pursue a second habitual-sex-offender charge. Petitioner contends that because the actual offense date must have been July, 2006, before the amendment to § 750.520b, even if Petitioner had been convicted of the second count of CSC I, his sentences would not have run consecutively. Additionally, Petitioner

---

[4]Notably, Petitioner's calculation of the victim's age as of July, 2006 is simply wrong. The complainant would have been 7 years and 8 months in July, 2006. She would not turn 8 years old until November, 2006 and she would still be 8 years old on July, 2007, the date of the offense.

contends that had the fourth habitual offender charge not been dismissed, "the only consequence would be a higher maximum-minimum in the sentencing guidelines.  The minimum-minimum would remain the same."  (Docket #1-3, Page ID#31.)[5]  Further Petitioner argues that his plea was not voluntary because he did not understand "the complicated operation of the statutory amendment." (*Id.* at Page ID#31.)

    To pass constitutional muster, a plea of guilty or nolo contendere must be knowingly and voluntarily made.  *See, e.g., Brady v. United States,* 397 U.S. 742, 748 (1970).  The defendant must be aware of the "relevant circumstances and likely consequences" of his plea.  *Hart v. Marion Corr. Inst.,* 927 F.2d 256, 257 (6th Cir. 1991). This includes the defendant's awareness of the maximum sentence that can be imposed for the crime for which he is pleading guilty or nolo contendere.  *King v. Dutton,* 17 F.3d 151, 154 (6th Cir. 1994).  Additionally, a guilty or no contest plea is intelligent and knowing where there is nothing to indicate that the defendant is incompetent or otherwise not in control of his or her mental faculties, is aware of the nature of the charges, and is advised by competent counsel.  *Brady*, 397 U.S. at 756.  The voluntariness of a guilty or no contest plea is determined in light of all relevant circumstances surrounding the plea.  *Id.* at 749 (citations omitted).  A plea agreement is deemed involuntary and unknowing if a defendant is unaware that the prosecution's promise is illusory.  *United States v. Randolph,* 230 F.3d 243, 250–51 (6th Cir. 2000). Illusory representations made by the prosecutor to induce a defendant to waive his right to trial and enter a plea have been found to constitute coercion justifying the withdrawal of a plea.  *Spearman v. United States,* 860 F. Supp. 1234, 1249 (E.D. Mich.1994).

---

[5]Petitioner does not address the prosecutor's decision not to pursue a second habitual-sex-offender charge or the consequence of that decision.

When a petitioner brings a federal habeas petition challenging his plea of guilty or nolo contendere, the state generally satisfies its burden of showing that the plea was made voluntarily by producing a transcript of the plea proceedings.  *Garcia v. Johnson,* 991 F.2d 324, 326 (6th Cir. 1993).  Thus, where the state presents a plea-proceeding transcript which suggests the plea was both voluntary and knowing, a habeas petitioner seeking to challenge the plea on constitutional grounds bears a "heavy burden[.]"  *Id.* at 328.  This is because a state court's factual findings regarding the propriety of a plea are entitled to a presumption of correctness on habeas review.  28 U.S.C. § 2254(e)(1) (providing that state court determinations of factual issues are presumed correct unless the habeas petitioner rebuts the presumption by "clear and convincing evidence").  Conversely, if "the transcript is inadequate to show that a plea was voluntary and intelligent, the presumption of correctness no longer applies." *Garcia,* 991 F.2d at 327.

After reviewing the state court record, I find that Petitioner knowingly and voluntarily entered his no contest plea.  At the conclusion of the plea hearing and after having conducted the plea colloquy, the trial court accepted the plea, specifically noting that it was "knowingly, intelligently, and voluntarily made."  (Plea Tr. at 12, docket #10.)  At the hearing on Petitioner's motion to withdraw plea or for resentencing, the trial court stated that "[t]his was not an involuntary plea.  This is not a plea that was with illusory benefits.  This is a plea that had substantial, substantive, and real benefits for this defendant."  (Mot. Tr. at 9, docket #12.) Referring to the plea agreement, the trial court explained that "but for this plea agreement, in all likelihood, [Petitioner] would have received two consecutive 25-year sentences, minimum.  That's what was at stake."  (*Id.* at 8.)  The trial court went on to note that the "suggestion by [Petitioner] that his plea agreement was illusory is a fantasy creation of only his mind and not founded in the facts of this case or the law of

the State of Michigan." (*Id.* at 8.)  The trial court's factual finding that the plea was voluntary and knowing, which is presumptively correct, is supported by the record.  As I previously noted, the factual record demonstrates that on the date initially charged, the victim was eight years old and the new Michigan sentencing law was in effect.  The trial court's conclusion was patently reasonable. Petitioner received real substantive benefits in consideration for his plea; I therefore conclude that the plea agreement was not illusory.  *McAdoo v. Elo,* 365 F.3d 487, 498 (6th Cir. 2004) (where a defendant receives the "bargained for benefit" the plea is not illusory and he is not entitled to habeas relief).

Moreover, there is nothing in the record before the Court to indicate that Petitioner was "incompetent or otherwise not in control of his or her mental faculties." *Brady*, 397 U.S. at 756. Further, Petitioner testified under oath that he was "aware of the nature of the charges, and [was] advised by competent counsel." *Id.*  At the plea hearing, which took place the day trial was set to commence, Petitioner was forty-one years old and must have had at least basic familiarity with the criminal justice system, given his prior felony convictions.  There is no evidence that he suffered from any physical or mental incapacities which would have impaired his ability to understand the proceedings or the nature of his plea.  A review of the plea hearing transcript reveals that Petitioner responded appropriately to the court's questions and that no one at the hearing, including Petitioner or Petitioner's counsel, expressed concern about Petitioner's ability to comprehend the proceedings. Additionally, at the plea hearing, Petitioner acknowledged that he had been advised of the terms of the plea agreement and that he understood its terms. (Plea Tr. at 4-6, 11-12.)  Likewise, Petitioner was advised of the maximum penalties for the charge and the rights that he would be waiving by entering a plea. (*Id.* at 6–9.)  Finally, Petitioner testified that he was satisfied with his counsel's

representation.  (*Id.* at 6.)  On the clear factual record, Petitioner's plea was voluntary, knowing and intelligent.

Based on the foregoing, Petitioner has failed to demonstrate that the plea agreement was illusory or that his plea was not made knowingly, voluntarily and intelligently.  Therefore, the state-court's rejection of Petitioner's claims was not based on an unreasonable determination of the facts and was neither contrary to nor an unreasonable application of established Supreme Court precedent.  28 U.S.C. § 2254(d).

## B.    Disproportionate Sentence

In his second claim for relief, Petitioner contends, as he did in the state courts, that his sentence of 15 to 50 years was disproportionate "under the circumstances."[6]  (Docket #1-3, Page ID#34.)  On direct appeal, the Michigan Court of Appeals considered and denied this claim for lack of merit and the Michigan Supreme Court denied Petitioner's application for leave to appeal because it was not persuaded that the questions presented should be reviewed.  (*See* MCOA Order, docket #1-3, Page ID#41; Mich. Order, docket #1-2, Page ID#18.)

Petitioner principally claims that his sentence was disproportionate under the analysis enunciated by the Michigan Supreme Court in *People v. Milbourn*, 461 N.W.2d. 1 (Mich. 1990).

The trial court rejected Petitioner's claim stating that it:

sentenced within the guidelines.  15 years was the top end of the guidelines. The prosecution -- the defense was asking through counsel and the defendant himself was asking through counsel please don't give me the high end of the guidelines.  I gave him the high end of the guidelines.  I stayed within the

---

[6]Although not expressly stated, "the circumstance" to which Petitioner refers appears to be Petitioner's belief that because the trial court has no control over parole decisions, which are determined solely by the Parole Board, and because the Parole Board infrequently votes to parole criminal sex offenders, Petitioner will likely have to serve all or most of his 50-year maximum sentence, as opposed to the 15 year minimum sentence. (*See* Def. Delayed Appl. for Leave to Appeal, docket #1-3, Page ID##7-8.)

guidelines. And I guess failing to articulate it, I will say now, to the extent that there's any need to have a final record, which I absolutely do not believe there is, the Court fully considered the sentencing guidelines. I gave the maximum under the sentencing guidelines because I believe they were appropriate, and I don't think any -- if there's rescored or changed the levels and it was still the maximum, I would give him the maximum again. . . . resentencing is not appropriate.

(Motion Tr. at 12-13, docket #12.)

To the extent Petitioner argues that his sentence was disproportionate under *Milbourn*, 461 N.W.2d. at 1, he fails to raise a cognizable habeas claim. In *Milbourn*, the court held that a sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender. *Milbourn*, 461 N.W.2d at 9-10; *People v. Babcock*, 666 N.W.2d 231, 236 (Mich. 2003). It is plain that *Milbourn* was decided under state, not federal, principles. *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at *2 (6th Cir. Apr. 21, 1995); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994). A federal court may grant habeas relief solely on the basis of federal law and has no power to intervene on the basis of a perceived error of state law. *Bradshaw*, 546 U.S.at 76; *Pulley*, 465 U.S. at 41. Thus, Petitioner's claim based on *Milbourn* is not cognizable in a habeas corpus action.

To the extent Petitioner claims his sentence violates the Eighth Amendment, his claim fails. The United States Constitution does not require strict proportionality between a crime and its punishment. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v.*

- 17 -

*California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)).  A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'"  *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)).  Ordinarily, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole."  *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995).  Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law.  Petitioner's sentence therefore does not present the extraordinary case that runs afoul of the Eighth Amendment's ban on cruel and unusual punishment.  Consequently, the state-court's rejection of Petitioner's claim was not based on an unreasonable determination of the facts and was neither contrary to nor an unreasonable application of established Supreme Court precedent.  28 U.S.C. § 2254(d).

## C.    Sentence Scoring

In his third claim for relief, Petitioner contends that the trial court improperly scored PRV 2 and although proper scoring of this variable will not change his sentence, state law requires that Petitioner "be sentenced according to accurately scored guidelines and on the basis of accurate information." (docket #1-3, Page ID#38 (quoting *People v. Francisco*, 474 Mich 82 (2006).)  As previously discussed, the Michigan Court of Appeals denied Petitioner's application for leave to appeal on the merits, and the Michigan Supreme Court denied leave to appeal because it was

unpersuaded that the issue warranted review.  (*See* MCOA Op., docket #1-3, Page ID#41; Mich.

Order, docket #1-2, Page ID#18.)

       Petitioner's objection to the scoring of PRV 2 under state law is not cognizable on

habeas review.  Claims concerning the improper scoring of sentencing guidelines are state-law

claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S.

370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls

within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th

Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas

relief);  *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines

establish only rules of state law).  There is no constitutional right to individualized sentencing.

*Harmelin v. Michigan*, 501 U.S. 957, 995 (1991); *United States v. Thomas*, 49 F.3d 253, 261 (6th

Cir. 1995); *see also Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978).  Moreover, a criminal defendant

has "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence

recommendations."  *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004); *accord  Lovely v.

Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004); *Thomas v. Foltz*, 654 F. Supp. 105, 106-07

(E.D. Mich. 1987).

       Although state law errors generally are not reviewable in a federal habeas proceeding,

an alleged violation of state law "could, potentially, 'be sufficiently egregious to amount to a denial

of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'"  *Bowling

v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003); *see also Doyle*, 347 F. Supp. 2d at 485 (a habeas court

"will not set aside, on allegations of unfairness or an abuse of discretion, terms of a sentence that is

within state statutory limits unless the sentence is so disproportionate to the crime as to be

completely arbitrary and shocking.") (citation omitted).  A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude."  *Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. 2005) (quoting *Roberts v. United States,* 445 U.S. 552, 556 (1980)); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948).  To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence.  *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984).  A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence.  *Tucker*, 404 U.S. at 444, 447.

Petitioner's sentence clearly is not so disproportionate to the crime as to be arbitrary or shocking.  *Doyle*, 347 F. Supp. 2d at 485.  Further, although Petitioner argues that PRV 2 was misscored because Petitioner's "prior low severity felony conviction" was not "entered (3-22-2007) until *after* the commission date of the sentencing offense (7-4-06)," (docket #1-3, Page ID#37), Petitioner does not demonstrate that the trial court relied on this misinformation when it imposed sentence.  Moreover, even if the trial court did rely on this misinformation,  Petitioner concedes that rescoring PRV 2 will not change the sentencing guidelines range.  Consequently, such an error can not be of constitutional dimension.  *Koras,* 123 F. App'x at 213.

For all these reasons, the state court's rejection of Petitioner's claim was not based on an unreasonable determination of the facts and was neither contrary to nor an unreasonable application of established Supreme Court precedent.  28 U.S.C. § 2254(d).

### D.   Ineffectiveness of Counsel

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  The two-prong *Strickland* test applies to claims of ineffectiveness brought against both trial and appellate counsel. *See Strickland*, 466 U.S. at 687-696 (examining conduct of trial counsel); *Smith v. Murray*, 477 U.S. 527, 535-536 (1986) (applying *Strickland* to claim of attorney error on appeal).  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).

When considering an ineffective assistance claim, the court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.  Because the state courts decided petitioner's claims of ineffective assistance of counsel on their merits, their decision must be afforded deference under AEDPA. *See Burt v. Titlow*, 134 S. Ct. 10, 15-16 (2013);

*Harrington v. Richter*, 131 S. Ct. at 784.  To receive habeas relief, petitioner must demonstrate that the state court's decision was contrary to, or represented an unreasonable application of, *Strickland v. Washington*.  *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002).  Moreover, as the Supreme Court recently has observed, while "'[s]urmounting *Strickland*'s high bar is never an easy task,' . . . [e]stablishing that a state court's application was unreasonable under § 2254(d) is all the more difficult."  *Harrington*,131 S. Ct. at 788  (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 1485 (2010)).  Because the standards under both *Strickland* and § 2254(d) are highly deferential, "when the two apply in tandem, review is 'doubly' so."  *Harrington*, 131 S. Ct. at 788 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).  In those circumstances, "[t]he question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel.  *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness.  *Id.*  In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process.  "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Id.* at 59.

### 1.      Appellate Counsel

In his fourth claim for relief, Petitioner contends that his appellate counsel was ineffective for failing to raise the issues raised by Petitioner in his *pro se* motion for relief from

judgment.  Petitioner asserts that appellate counsel's failure establishes cause and prejudice for Petitioner's failure to raise this issue on direct appeal.

In his motion for relief from judgment, Petitioner asserted that his appellate counsel was ineffective for not informing him of all possible defenses, for not being familiar with the facts and law of his case, and for not requesting a *Ginther*[7] hearing.

The state court rejected Petitioner's claims as follows:

Defendant first claims that both his trial and appellate counsel were ineffective for failing to inform him that he could argue the defense of double jeopardy.  This has no basis in law or fact.  The Double Jeopardy Clauses of both the United States and Michigan Constitutions protect against a second prosecution for the same offense **after acquittal or conviction** and against multiple punishments **for the same offense**.  *People v Bewersdorf*, 438 Mich 55; 475 NW2d 231 (1991).  At the time of Defendant's plea he had not been previously acquitted or convicted of the crime for which he was charged so double jeopardy simply did not apply.  Additionally, Defendant was charged with two counts of criminal sexual conduct in the first degree because the prosecution believe there were two separate instances of criminal sexual conduct.  Defendant was not twice charged for the same offense, he was charged with two separate instances of criminal sexual conduct involving the same 9 year old child.  Whether or not the prosecution would ultimately be able to prove both offenses occurred is irrelevant because on the day set for trial Defendant entered a plea to the first charge and the second was dismissed.

The Court is satisfied that there is absolutely no merit whatsoever to Defendant's double jeopardy argument.  Counsel is not ineffective for failing to raise meritless issues.  *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000).  Therefore, Defendant is unable to show good cause for failing to raise this issue on his initial appeal, and he is barred from bringing it n a motion for post judgment relief pursuant to MCR 2.508(D)(3).

To the extent that Defendant claims his trial and appellate counsel were otherwise ineffective for failing to familiarize themselves with the facts of the case, the Court strongly disagrees.  The Court is satisfied beyond any iota of doubt that Defendant was competently represented by counsel and

---

[7]*People v. Ginther*, 212 N.W.2d 922 (Mich. 1973).

benefitted greatly from his representation.   By pleading no contest and receiving a 15 to 50 year sentence, Defendant avoided a very real possibility of two (2) consecutive mandatory 25 year minimum terms with the Department of Corrections.   Defendant knowingly and voluntarily entered a plea whereby he receive a substantial benefit from the bargain struck with the prosecution.   When Defendant then decided he did not like his sentence he was appointed appellate counsel who challenged the plea and the sentence both in the trial court and the Michigan Court of Appeals.   Defendant was denied relief at every juncture not because his counsel was defective, but because he is not entitled to the relief sought.   Defendant's claims continue to be without merit and the instant Motions are utterly frivolous.

(Post J. Mot., docket #18 at 2-3.)

Petitioner filed a motion for reconsideration, asserting, among other things, that the state court erred in rejecting his double jeopardy claim and, reiterating his claim that appellate counsel was ineffective for not raising it on appeal.   The state court again rejected Petitioner's claims because Petitioner had failed "to articulate any new issue suggesting the Court erred in its initial decision." (Recons. Mot., docket #20 at 3.)

The Double Jeopardy Clause guarantees that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb."   U.S. CONST. amend. V.   This clause protects against multiple punishments for the same offense.   *See N. United States v. Dixon*, 509 U.S. 688, 696 (1993); *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969); *Costo v. United States*, 904 F.2d 344 (6th Cir. 1990).   The protection against multiple punishments for the same criminal act "is designed to insure that the sentencing discretion of courts is confined to the limits established by the legislature."   *Ohio v. Johnson*, 467 U.S. 493, 499 (1984).   This guarantee serves principally as a restraint on courts and prosecutors, not on legislatures.   *See Garrett v. United States*, 471 U.S. 773, 793 (1985) (no double-jeopardy violation when Congress intended to permit prosecution for continuing criminal enterprise after prior conviction for predicate offense); *Missouri v. Hunter*, 459 U.S. 359,

365-66 (1983).  Therefore, when determining whether punishments are "multiple" under this aspect of the Double Jeopardy Clause, the court is bound by the intent of the legislature.  *Johnson*, 467 U.S. at 499; *Hunter*, 459 U.S. at 366-68.

In this context, the United States Supreme Court has traditionally applied the "same-elements" test first enunciated in *Blockburger v. United States*, 284 U.S. 299, 304 (1932). *See Rutledge v. United States*, 517 U.S. 292, 297 (1996).  The same-elements test, also known as the "*Blockburger* test", inquires whether each offense contains an element not contained in the other. If "the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not." *Blockburger*, 284 U.S. at 304.  If not, they are the "same offense" and double jeopardy bars additional punishment.  *See Brown v. Ohio*, 432 U.S. 161, 168-69 (1977).  If the *Blockburger* test is satisfied, however, it is presumed that the legislature did not intend to punish the defendant under both statutes and there is no double jeopardy bar to multiple punishments.  *Whalen v. United States*, 445 U.S. 684, 691-92 (1980).

As the state court explained, Petitioner was neither charged with the same crime for which he had previously been convicted or acquitted, nor was he charged with the same crime twice. Rather, Petitioner was charged with having twice committed the offense of criminal sexual conduct against the same victim.  (*See* Post J. Mot., docket #18 at 2-3.)  Moreover, the evidence Petitioner offers in support of his petition supports the state court's determination that although charged with violating one criminal statute, each charge corresponded to a different unlawful sexual encounter.

The investigative notes from the reporting officer reflect that when asked about the worst encounter the victim had with Petitioner, the victim described the July 4th incident wherein Petitioner had vaginal-penile intercourse with the victim, and then the victim stated that "this happened more than once." (Docket #1-5, Page ID#118.)  Additionally, the medical assessment report reflects that the victim told a friend that Petitioner "touched [the victim] and penetrated her genital area with his penis and his fingers." (Docket #1-5, Page ID#122.)  Further, in connection with the medical assessment the victim spoke with a social worker who reported that the victim told her that Petitioner "humped me and he took off my clothes and he touched me on my private and my butt;" that "I was sitting on him and his private was in my private;" that there was a time when Petitioner "wanted her to put her hand on his private," and that the abuse happened "multiple times" while she lived on a specific street. (*Id.*)

Consequently, the state court's determination that appellate counsel's failure to advise Petitioner that he could argue a double jeopardy defense was reasonable in the absence of any factual or legal basis for doing so.  It is not ineffective assistance for appellate counsel to decide not to raise meritless claims.  *See Smith v. Murray*, 477 U.S. 527, 536 (1986);  *Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013) ("[A] petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit.").

Petitioner asserts that appellate counsel was also ineffective for not being familiar with the facts and law relevant to his case.  To the extent this claim stems from Petitioner's belief that a double jeopardy claim was possible, as fully discussed above, neither the facts nor the law supported a double jeopardy claim.  Consequently, counsel was not ineffective for failing to raise such a claim.  *See Smith*, 477 U.S. at 536.

To the extent Petitioner claims that appellate counsel was ineffective for not being familiar with the facts and other law relevant to his case, Petitioner fails to identify any facts or law about which appellate counsel should have been, but was not, aware.   Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief.  *See, e.g., Workman v. Bell*, 160 F.3d 276, 287 (6th Cir. 1998) (conclusory allegations of ineffective assistance of appellate counsel do not warrant habeas relief).   Moreover, in rejecting this claim in Petitioner's motion for relief from judgment, the state court made clear that Petitioner was "competently represented by counsel" and that he was "denied relief at every juncture not because his counsel was defective, but because he is not entitled to the relief sought."  (Post J. Mot., docket #18 at 3.)

Finally, Petitioner claims that appellate counsel was ineffective for  failing to request a *Ginther* hearing regarding his trial counsel's alleged ineffective assistance.   Under Michigan law, a trial court may hold a hearing on a post-conviction motion claiming ineffective assistance of counsel.  *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973).   A so-called *Ginther* hearing is appropriate when the defendant's claim of ineffective assistance of counsel depends on facts not of record*. Id.* at 924–25. The trial court should take testimony if a factual dispute exists.  *Id.* at 924. However, as explained below, trial counsel was not ineffective.  Thus, Petitioner's appellate counsel cannot be ineffective for failing to seek a *Ginther* hearing.   As previously discussed, "[a]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell,* 264 F.3d 663, 676 (6th Cir. 2001).[8]

_____

[8]Petitioner also appears to be claiming that *Ginther* required his appellate counsel to raise the following issue: whether Petitioner should have received a hearing to determine if substitute trial counsel was necessary, after Petitioner sent two letters to the state court complaining about his trial counsel. (Docket #1-4, Page ID#83-84; 113-116.) Notably,

### 2.      Trial Counsel

In his fifth claim for relief, Petitioner contends that his trial counsel was ineffective for failing to object to a "multiplicitous indictment" on double jeopardy grounds, failing to make herself familiar with the facts and law of his case, and failing to represent Petitioner as required by the Sixth Amendment.  (Pet., docket #1, Page ID#12.)

As set forth in full above, the state court rejected Petitioner's ineffective assistance of trial counsel claim for the same reasons it rejected Petitioner's claim that his appellate counsel was ineffective.  Likewise, as discussed above, the state court determined that Petitioner's double jeopardy claim was meritless, and thus, his counsel could not have been ineffective for failing to inform Petitioner about, or failing to raise, a double jeopardy claim.  Further, as discussed above, the state court flatly rejected Petitioner's claim that his trial counsel did not familiarize herself with the facts and law relevant to Petitioner's case because this claim was derivative of Petitioner's double jeopardy claim and was meritless.  Relatedly, the state court was clear that trial counsel's performance was not constitutionally ineffective stating, that it was "satisfied beyond any iota of doubt that Defendant was competently represented by counsel and benefitted greatly from his representation." (Post J. Mot., docket #18  at 3.)  Moreover, even if trial counsel's performance fell below an objective standard of reasonableness, Petitioner has not offered any facts or evidence to suggest that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill*, 474 U.S. at 59.

---

the letters were sent to the state court four months prior to Petitioner's plea.  Even assuming this claim is cognizable on habeas, it is without merit.  Even if the state court erred by not appointing substitute counsel, "[u]nless [a defendant] can establish an ineffective assistance claim under *Strickland* . . .  any error in the [state] court's disposition of [the defendant's] motion for appointment of substitute counsel is harmless."  *United States v. Graham*, 91 F.3d 213, 217 (D.C. Cir. 1996); *see also United States v. Calderon*, 127 F.3d 1314, 1343 (11th Cir. 1997); *United States v. Zillges*, 978 F.2d 369, 372–73 (7th Cir. 1992).

### E.    Double Jeopardy

In his sixth claim for relief, Petitioner asserts that the criminal charges against him were barred by the Double Jeopardy Clause.  As fully explained above, Petitioner's double jeopardy claim is based on the false premise that because the victim described in detail only one unlawful sexual encounter with Petitioner, there was only one incident of CSC 1.  Petitioner disregards the victim's statements to the interviewing officer and the social worker, in which the victim states that she had been the victim of multiple acts of unlawful sexual conduct perpetrated by Petitioner.  Moreover, the state court reasonably determined that Petitioner was charged with two separate instances of criminal sexual conduct involving the same victim.  (Post J. Mot., docket #18 at 2-3.)

### Recommended Disposition

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.


Date:  June 2, 2014                                   /s/ Ellen S. Carmody
                                                      ELLEN S. CARMODY
                                                      United States Magistrate Judge


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).